## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BOARD OF EDUCATION OF THE
LOS LUNAS PUBLIC SCHOOLS,

             Plaintiff/Counterdefendant,                    Civ. No. 03-299 JH/LFG

vs.

JOSE AND PATRICIA ARAGON
on behalf of MATTHEW ARAGON
and MATTHEW ARAGON,

             Defendants/Counterclaimants,

ALBUQUERQUE PUBLIC SCHOOLS
BOARD OF EDUCATION,

             Crossdefendant/Intervenor.


## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff/Counterdefendant Los Lunas Public

School Board of Education's ("Los Lunas") Motion for Summary Judgment, filed July 16, 2003

**[Doc. No. 18]**.  The Court having considered the motion, Los Lunas's opening and reply briefs in

support of the motion, Crossdefendant/Intervenor Albuquerque Public School's ("APS") Brief in

Support of Its Motion for Summary Judgment, filed January 22, 2004 **[Doc. No. 35]**, APS's

Reply Brief in Support of Its Motion for Summary Judgment, and relevant law, and being

otherwise fully informed, finds that the motion is not well taken and will be denied.[1]

---

[1] APS did not file a motion for summary judgment on the statute of limitations question.
Pursuant to this Court's invitation, however, APS opted to brief the limitations issue.  The Court
will construe APS's Brief in Support of Its Motion for Summary Judgment as a memorandum in
support of Los Lunas's motion for summary judgment.

**BACKGROUND**

Los Lunas initiated this action as an appeal and complaint for review of the Final Decision of the Administrative Appeal Officer ("AAO") issued February 6, 2003, in a state administrative proceeding brought by Jose and Patricia Aragon ("Aragons"). The Aragons, parents of Matthew Aragon, a student with a handicap, brought their administrative claim under the Individuals with Disabilities Education Act ("IDEA"). In the Final Decision challenged here, the AAO overturned the Independent Hearing Officer's ("IHO") determination that a one-year statute of limitations applied to a request for a due process hearing under the IDEA. The AAO ruled that the three-year statute of limitations from New Mexico's general statute of limitations governing personal injury actions, *see* N.M. Stat. Ann. § 37-1-8 (1975), applied to the IDEA claim. On summary judgment, Los Lunas and APS (the "Districts") ask this Court to determine as a matter of law that a one-year statute of limitations applies to requests for due process hearings under the IDEA.

Student Matthew Aragon has qualified for receipt of special education on the basis of disability since kindergarten. Student Aragon attended APS from kindergarten through the ninth grade. From 1999 to 2000, when Student Aragon should have been in tenth grade, Student Aragon was not allowed to and/or did not attend public school at either APS or Los Lunas. In the 2000-2001 and 2001-2002 school years, Student Aragon attended school in Los Lunas. Student Aragon has not received a high school diploma and currently is pursuing a diploma at Los Lunas High School through a special education program. At both APS and Los Lunas, Student Aragon was educated pursuant to an individualized education program ("IEP"). IEPs, which are required pursuant to the IDEA, are road maps of the specially-designed instruction a public school intends to provide a student covered by the Act. IEPs must be reviewed by the teacher of

a child, a representative of the school, the parents of a child, and, if possible, the child at least annually.

The dispute here initially arose when the Aragons filed a request for a due process hearing with the New Mexico State Department of Education in April 2002, claiming that the Districts had failed to provide Student Aragon with a free appropriate public education as required by the IDEA. At the due process hearing, the Districts filed separate pre-hearing motions seeking to dispose of some or all of the Aragons' claims on the ground, among other things, that the claims were barred by the statute of limitations. Specifically, the Districts argued that a two-year statute of limitations, borrowed from the New Mexico Tort Claims Act, N.M. Stat. Ann. § 41-4-1 *et seq.*, should be applied to the Aragons' claims. In contrast, the Aragons argued that a three-year statute of limitations, borrowed from New Mexico's general statute of limitations applicable to personal injury actions, *see* N.M. Stat. Ann. § 37-1-8 (1975), should be applied.

On July 9, 2002, the IHO dismissed all claims against APS and some claims against Los Lunas after determining that a one-year statute of limitations barred the claims. The IHO, rejecting both the two-year statute of limitations advocated by the Districts and the three-year statute of limitations advocated by the Aragons, found that the IDEA contained an implied one-year statute of limitations based on the term of the annual IEP. The IHO subsequently found in favor of Los Lunas on the merits of the Aragons' remaining claims in a decision dated September 17, 2002. The Aragons timely appealed the decision on the merits as well as the earlier decision regarding the one-year statute of limitations. The appeals were consolidated for review by the AAO.

On February 6, 2003, the AAO entered a final order reversing the IHO's pre-hearing

ruling on the statute of limitations, finding that the proper limitations period should be borrowed from New Mexico's statute of limitations governing personal injury actions and reinstating the Aragons' claims against the Districts falling within the three-year personal injuries limitations period.  In her original order, the AAO gave the parties an opportunity to introduce additional evidence before the AAO regarding the previously-unheard claims that fell outside a one-year but within a three-year statute of limitations.  The parties, however, in an effort to preserve New Mexico's two-tier system of due process granting the right to a hearing and an administrative appeal, asked the AAO to remand the matter to the IHO.[2]  The AAO granted the parties' request.

On February 13, 2003, the IHO notified the AAO and the parties that she "seriously question[ed]" the AAO's authority to remand the case and the IHO's jurisdiction over the case. The IHO further stated that she would not proceed without "contractual agreement" from the Districts or an order from a court of competent jurisdiction requiring the IHO to accept the remand.  The Aragons filed a state court writ of mandamus on March 10, 2003, requesting that the court command the New Mexico State Department of Education to make various systemic changes to the state due process administrative procedure.  The writ was denied.

In an apparent standstill, Los Lunas filed this action in federal court against the Aragons on March 10, 2003.  The same day, the Aragons filed an appeal of the IHO's decision and a complaint for damages against the Districts in New Mexico's Second Judicial District Court.  The Districts removed the state action to this Court, where, in a July 10, 2003, order, it was consolidated with the federal action filed by Los Lunas.

---

[2] Los Lunas asserts in its opening brief that only the Districts asked the AAO to remand the matter to the IHO for the taking of additional evidence.  The Aragons dispute this fact, arguing that they also asked the AAO to remand the matter to the IHO to take evidence.

The only issue on summary judgment is whether, as a matter of law, a one-year statute of limitations applies to the Aragons' request for a due process hearing under the IDEA.

## STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted).  Under Rule 56(c) of the Federal Rules of Civil Procedure, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998).  "'Instead, the movant only bears the initial burden of 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.'"  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.  *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

-5-

**DISCUSSION**

The Districts argue that summary judgment in their favor is appropriate as a matter of law. Specifically, and for the first time, the Districts maintain that the Court should borrow the one-year limitations period from the New Mexico Human Rights Act ("NMHRA") and apply that limitations period to determine the timeliness of the Aragons' request for a due process hearing under the IDEA.[3]  The Aragons disagree, arguing instead that the Court should adopt and affirm the AAO's decision borrowing the three-year limitations period from New Mexico's general statute of limitations governing personal injury actions.  With respect to this issue, the parties do not dispute any material issues of fact.[4]  Accordingly, the Court may decide this question as a matter of law.[5]

_____

[3] The Districts did not raise the NMHRA in the underlying administrative litigation. Rather, before the IHO, the Districts argued that the two-year limitations period from the New Mexico Tort Claims Act should apply.

[4] In their Response to the Motion for Summary Judgment, the Aragons argue that a material factual dispute exists in this case.  First, the Aragons argue that Los Lunas's opening brief incorrectly states that the Districts orally asked the AAO to remand the matter to the IHO to take additional evidence when in fact the Aragons also supported a remand.  Second, the Aragons argue that the facts cited by Los Lunas constitute a procedural history and that the Court should not decide the statute of limitations issue based on a procedural, instead of a factual, basis.  Third, the Aragons argue that ruling on the instant motion should be made in the context of the entire administrative record.  These arguments do not create genuine issues of material fact with respect to the statute of limitations issue, and therefore do not preclude entry of summary judgment.

[5] Los Lunas characterizes this action as both an appeal of the AAO's decision and a complaint.  This action, however, is an original civil action, and not an appeal of the state administrative action.  *See, e.g.*, *Kirkpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380, 385-87 (4th Cir. 2000); *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 854 (8th Cir. 2000).  Even if this action were an appeal instead of a new action, the Court's standard of review would not be affected.  The statute of limitations issue a matter of law, and Court's review of the issue is *de novo*.

I.      Standard for Determining Statute of Limitations.

The IDEA does not contain an express statute of limitations period for filing a request for a due process hearing.  "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."  *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985).

The Tenth Circuit has not considered the appropriate statute of limitations to borrow for an administrative due process or a civil claim arising under the IDEA.  Other circuit courts have held that it is appropriate to borrow the limitations periods from a variety of state statutes, including but not limited to:  (i) tort claims acts, *see S.V. v. Sherwood*, 254 F.3d 877, 880-81 (9th Cir. 2001), (ii) personal injury or catch-all personal action statutes, *see Murphy v. Timberlane Regional Sch. Dist.*, 22 F.3d 1186, 1193 (1st Cir.), *cert. denied*, 513 U.S. 987 (1994), (iii) human rights statutes, *see Strawn v. Missouri State Bd. of Educ.*, 210 F.3d 954, 957 (8th Cir. 2000), and (iv) liabilities created by legislative acts statutes, *see Dreher v. Amphitheater Unified Sch. Dist.*, 22 F.3d 228, 232 (9th Cir. 1994).

II.     Characterization of the Claim.

To select a statute of limitations here, the Court first must characterize the essence of the Aragon's claim under the IDEA.  *See Sherwood*, 254 F.3d at 879 ("[i]n order to assess which state statute of limitations is most analogous, the court 'must characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle'") (quoting *Wilson*, 471 U.S. at 268); *Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 631 (10th Cir. 1993) (in characterizing a federal claim, the focus is on the elements

-7-

of the cause of action, not the remedy).  The characterization of a federal statutory claim is a matter of federal, not state, law.  *See Wilson*, 471 U.S. at 269-70 (citation omitted).  The Aragons filed their initial request for a due process hearing, arguing that the Districts had breached their duty to the Aragons' son when the Districts did not comply with their obligations under the IDEA to provide him with a free appropriate public education.  In *Wilson*, the Supreme Court explained that claims of injury to the "'constitutional or federal statutory rights which emanate from or are guaranteed to the person'" are, "[i]n the broad sense" claims resulting from "'personal injuries.'"  *Id.* at 278 (quoting *Almond v. Kent*, 459 F.2d 200, 204 (4th Cir. 1972)).  Accordingly, under federal law, the Aragon's claim is most like a claim for personal injuries.  The Aragons' claim also can be characterized as a claim for personal injuries arising from a liability created by statute.  *See Sherwood*, 254 F.3d at 880.

The characterization of the Aragons' claim as a claim for personal injuries comports with the Supreme Court's general preference for borrowing state limitations governing personal injury claims.  *See Wilson*, 471 U.S. at 279.  The Supreme Court expressed this preference in part because "[i]t is most unlikely that the period of limitations applicable to [personal injury actions] ever was, or ever would be, fixed in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect."  *Id.*  The Tenth Circuit, relying on *Wilson*, also has characterized analogous claims under Section 504 of the Rehabilitation Act as claims for personal injuries.  *See Baker*, 991 F.2d at 632.  Characterizing the IDEA claim as a personal injury claim also comports with the definition of a tort.  A tort action in New Mexico is identified by a harm or injury to the individual caused by a negligent act or failure to act.  The history of the IDEA demonstrates a desire by Congress to remedy the injury or harm that results to students deprived

of education on the basis of disability.  Accordingly, as the Aragons point out, the harm to students "sounds in tort."  For the foregoing reasons, the Court characterizes the Aragons' claim under the IDEA as a claim for personal injuries arising under a statute.  *See, e.g.*, *Wilson*, 471 U.S. at 278; *Baker*, 991 F.2d at 632; *Sherwood*, 254 F.3d at 880-81; *Manning v. Fairfax County Sch. Bd.*, 176 F.3d 235, 239 (4th Cir. 1999).

III.    <u>Selection of an Analogous State Statute</u>.

The Court next must select the most analogous state statute from which to borrow a statute of limitations.  In New Mexico, two statutes address personal injury claims:  the New Mexico Tort Claims Act ("NMTCA"), N.M. Stat. Ann. § 41-4-1 *et seq.*, and the general statute of limitations governing personal injury claims, N.M. Stat. Ann. § 37-1-8.  Before the IHO and AAO, the Districts argued that the two-year statute of limitations from the NMTCA should be borrowed.  The Aragons, however, argued, and continue to argue, that the general statute governing personal injury claims should apply.

A claim brought under the IDEA seeking a remedy for a public school's breach of a duty created by the IDEA--*i.e.*, a claim for personal injuries, *see Wilson*, 471 U.S. at 278; *Baker*, 991 F.2d at 632--is most similar to a claim brought against a public entity under the NMTCA for a breach of duty.  The NMTCA is a statute that governs claims for personal injuries against government entities.  The Aragons' claim is analogous to the NMTCA in several respects.  First, as described above, a claim under the NMTCA and a claim under the IDEA both can be characterized as claims for personal injuries.  *See Wilson*, 471 U.S. at 278.  Second, claims under the NMTCA and the IDEA both arise from liabilities created by statute.  *See Sherwood*, 254 F.3d at 880 (noting that claims under the Oregon Tort Claims Act arise from liabilities created by

statute).  Third, claims under the NMTCA and the IDEA are instituted against governmental

entities.  *See id.* at 881 (borrowing the statute of limitations from the Oregon Tort Claims Act for

a IDEA claim because the "[Act's] statute of limitations applies specifically to claims alleging

breaches of statutory duty by school districts and other public bodies").  Accordingly, the Court

holds that the NMTCA is the most analogous state statute to the Aragon's claim for relief under

the IDEA.

IV.     Consistency with Federal Law.

        The Court may borrow the two-year statute of limitations from the NMTCA only if

application of the statute of limitations in the NMTCA is not inconsistent with federal law.  To

determine whether application of the limitations period is inconsistent with federal law, the Court

must look to the IDEA itself, including the Act's underlying policies and purpose.

        The IDEA requires that a public school provide a free appropriate public education to

each student who qualifies for receipt of special education on the basis of disability.  *See* 20

U.S.C. § 1400(d).  To determine the appropriate education for each child, the IDEA requires the

teacher of the child, a representative of the school, the parents of the child, and, if possible, the

child him or herself, to work together in a collaborative process to formulate an IEP.  *See id.* §

1414(d)(1)(B); *see also Sherwood*, 254 F.3d at 881 (acknowledging that the "statutory scheme

mandat[es] parental participation in an annual decision-making process").  The IEP should set out

in writing the present educational performance level of the student, the specific educational

services the school will provide, the extent to which the child should be educated with non-

disabled peers, the annual educational goals, and the objective criteria for evaluating whether the

school is achieving the goals.  *See* 20 U.S.C. § 1414(d)(1)(A).  Although the IEP must be

reviewed and revised "not less than annually," a parent may request a reevaluation of a student at any time. *Id.*

The IDEA contains procedural safeguards to protect parents' interests in overseeing a child's special education needs. Schools must give parents prior written notice of any proposals to "initiate or change[,] or . . . refus[al] to initiate or change[,] the identification, evaluation, or educational placement of the child . . . or the provision of a free appropriate public education to the child" and an opportunity to challenge any of these or other matters pertaining to the child's placement and evaluation. *See id.* § 1415(b)(3) and (6). The Act directs states to provide a due process hearing for parents who disagree with school authorities' decisions involving their child's education. *See id.* § 1415(i)(2).

The IDEA also contains provisions to ensure a prompt resolution of any complaints or concerns. For example, if a parent requests a due process hearing under the IDEA, a hearing must be conducted and a final decision entered within 45 days of the request. *See* 34 C.F.R. § 300.511. A review or appeal of that decision must be completed within thirty days of the date the appeal was initiated. *See id.* In addition, the IDEA or implementing regulations do not contain a provision for discovery. The legislative history of the IDEA also indicates that prompt resolution of disputes is important to ensuring a child's educational development. Senator Williams, the IDEA's principal author, recognized this in the final Senate debate, stating, "I cannot emphasize enough that delay in resolving matters regarding the education program of a handicapped child is extremely detrimental to his development." 121 Cong. Rec. 37,416 (1975), *cited in CM v. Board of Educ.*, 241 F.3d 374, 380 (4th Cir. 2001). Moreover, the Districts argue that prompt resolution is particularly important because during the pendency of any due process proceeding,

"the child shall remain in the then-current educational placement of such child."  20 U.S.C. §

1415(j).

      After considering these competing policies, the Court holds that adopting a two-year

statute of limitations from the NMTCA is not inconsistent with federal law or policy.  To the

contrary, a two-year limitations period strikes a balance between the competing interests of the

IDEA.  On the one hand, the policy of the IDEA is to provide prompt, expeditious resolution of

disputes.  The Act was intended to make sure children will benefit from their statutorily

guaranteed free appropriate public education while they can most benefit from it.  *See CM*, 241

F.3d at 380; *Strawn*, 210 F.3d 957 ("children protected by the IDEA benefit greatly from quick

resolution of disputes because lost education is a substantial harm, and that harm is exactly what

the IDEA was meant to prevent").  The legislative history, short deadlines for decision making,

and lack of discovery provisions reflect this important policy.

      On the other hand, the IDEA calls for substantial parental involvement in the IEP process

and annual reviews.  It requires that schools collaborate with parents in developing IEPs.  As

several courts have recognized, "An unduly short limitations period might eliminate the intended

collaborative nature of the IDEA; parties will not continue to negotiate if parents are forced too

quickly to initiate a due process hearing to preserve their rights."  *CM*, 241 F.3d at 381; *Murphy*,

22 F.3d at 1194 (an abbreviated limitations period provides a greater disincentive for a parent to

shed an adversarial posture and begin cooperating with school officials to further the special-

education needs of a child).  In addition, because the Act grants parents the right to a due process

hearing and judicial review, parents must be given a meaningful opportunity to take advantage of

these rights.  Specifically, the Fourth Circuit explained, "[P]arents must have sufficient time to

understand any adverse decision by school authorities, evaluate any IDEA claim arising from an adverse decision, hire an attorney if necessary, and then proceed to challenge the adverse decision." *CM*, 241 F.3d at 381.  As the Fourth Circuit further pointed out, "Congress did not establish procedural rights as impediments to IDEA claims or as a means to foreclose parental involvement in their children's education.  Rather, these rights were created to supply a simple and efficient method to encourage parental participation and facilitate parental enforcement of the IDEA." *Id.*  The fact that the Act places the onus on school authorities to inform parents of the IDEA rights demonstrates that Congress intended for parents to challenge their children's educational program and otherwise enforce the IDEA.  *See id.*

A two-year limitations period is not so brief that it will deprive parents of their rights under the IDEA or undermine the IDEA policy of allowing parents to participate in the process. *See Strawn*, 210 F.3d at 958; *see also Sherwood*, 254 F.3d at 881 ("two-year limitations period is in accord with the lengths of limitations periods approved by most other courts") (citing cases). *But see Manning*, 176 F.3d at 239 (a one-year period strikes an appropriate balance between the need for speedy resolution of disputes and the need to ensure that parties have a fair opportunity to obtain judicial review).  On the other hand, two years is not so long that it impedes a child's right to a relatively quick resolution of claims so that important years of education are not lost. *See Strawn*, 210 F.3d at 957 (rejecting a five-year limitations period because it would frustrate federal policy of quick resolution of IDEA claims); *Sherwood*, 254 F.3d at 881 (rejecting a six-year limitations because it would frustrate federal policy "by permitting parents to wait for up to half the total length of a child's primary and secondary educational experience before raising a claim that the school district failed to provide the student with a free appropriate public education

-13-

and was liable for private-school tuition"). *But see Murphy*, 22 F.3d at 1193-94 (applying New Hampshire's catchall six-year statute of limitations to a claim for compensatory education under the IDEA). Accordingly, the Court holds that a two-year statute of limitations applies to the Aragons' claims.

V.       Rejection of Alternative Limitations Periods.

        A.       One-Year Limitations Period for Violations of the New Mexico Human Rights Act.

        The Court is not persuaded otherwise by the Districts' argument that a one-year statute of limitations should apply. Although the Districts originally argued that the statute of limitations from the NMTCA should be borrowed, the Districts now contend that the Court should borrow the one-year statute of limitations from the New Mexico Human Rights Act. The Districts claim that the NMHRA is the most analogous state statute to the IDEA.

        The Court first notes that the NMHRA does not contain a one-year statute of limitations period within which an aggrieved party must file an administrative complaint. Instead, the Act specifically provides that persons claiming to be aggrieved by an unlawful discriminatory practice "shall . . . file[] [a written complaint] with the division within one hundred eighty days after the alleged act was committed." N.M. Stat. Ann. § 28-1-10(A). Although the Act clearly provides for a 180-day statute of limitations, the Districts contend that the NMHRA has two statutes of limitations. The second statute of limitations, according to the Districts, is a one-year limitations period during which the commission or its director must dismiss a complaint for lack of probable cause, achieve satisfactory adjustment of the complaint as evidenced by an order of the commission, or file a formal complaint on behalf of the commission. *See id.* § 28-1-10(G). This

one-year period, however, is not a statute of limitations during which an aggrieved party must initiate an action.  In this case, the Court must borrow an analogous statute of limitations to determine when a party must initiate an administrative action.  Accordingly, the Districts' argument that the Court should borrow a one-year "statute of limitations" from the NMHRA governing an administrative body, and not an aggrieved party, is not persuasive here.

The Districts' argument that the Court should borrow the one-year limitations period from the NMHRA because it comports with the public policy behind the IDEA also does not persuade the Court otherwise.  Under a borrowing analysis, the Court first must identify a statute that is analogous to the IDEA that has a one-year limitations period.  Only then may the Court borrow the limitations period from the statute if the limitation is consistent with federal law.  Here, the Districts have not referred to an analogous statute with a one-year limitations period in which an aggrieved party may initiate an action.[6]  As described above, the NMHRA has only a 180-day statute of limitations.

Even if the Court were to determine that the NMHRA is the most analogous state statute, the Court would not borrow the 180-day limitations period from the statute because such a brief limitations period is not consistent with federal law.  The IDEA requires parental collaboration.  A 180-day statute of limitations would at worst eliminate or at best hinder the collaborative process between a child's parents and school officials--a process that the framers intended and the plain language of the Act requires.  *See, e.g.*, *CM*, 241 F.3d at 381; *Janzen*, 790 F.2d at 487-88.

---

[6] The Districts point to a one-year statute of limitations in the New Mexico Worker's Compensation Act.  *See* N.M. Stat. Ann. § 52-1-31(A).  This statute, however, relative to the statutes identified herein, is not analogous to the IDEA.  Indeed, the Districts have not cited, and this Court has not located, any case in which a court has borrowed a limitations period from a worker's compensation statute and applied that period to an IDEA claim.

Furthermore, such a short limitations period would not allow parents meaningfully to avail themselves of their rights under the Act to due process hearings and judicial review.  *See, e.g.*, *CM*, 241 F.3d at 381 (parents need sufficient time to understand any adverse decision by a school, evaluate any claim arising from the decision, hire an attorney, and proceed to challenge the decision).  It also would discourage meritorious claims by the uninformed or unaware.  *See Janzen*, 790 F.2d at 488, 489.  These federal concerns prohibit application of the statute of limitations in the NMHRA.  *See id.* at 488 (finding a one-year statute of limitations inconsistent with federal concerns and stating that federal concerns must remain paramount) (citing *Occidental Life Ins. v. EEOC*, 432 U.S. 355, 367-68 (1977) and *Tokarcik v. Forrest Hills Sch. Dist.*, 665 F.2d 443, 449 (3d Cir. 1981), *cert. denied sub nom. Scanlon v. Tokarcik*, 458 U.S. 1121 (1982)).[7]

      B.    <u>Three-Year Statute of Limitations for Personal Injuries</u>.

The Court also is not persuaded by the Aragons' argument that New Mexico's general three-year statute of limitations covering personal injury actions is the most analogous state statute to the Aragon's IDEA claim.  First, New Mexico's general personal injuries statute of limitations applies to claims brought against all persons or entities.  It does not apply to governmental employees or entities.  In *Sherwood*, the Ninth Circuit refused to borrow a general limitations period instead of the limitations period from the Oregon Tort Claims Act because the

---

[7] The Districts argue that the short time frames for decision-making in the IDEA demonstrate that a one-year statute of limitations is appropriate.  The Court notes, however, that parental concern serves as an enforcement mechanism for the Act.  This concern will motivate parents to pursue the rights of their child quickly without necessitating a short limitations period that might unreasonably restrict the rights of parents to enforce the IDEA.  *See Janzen*, 790 F.2d at 488 (citing *Scokin v. Texas*, 723 F.2d 432, 437 (5th Cir. 1984)).

general statute of limitations applied broadly to any claim and not specifically to a claim against a governmental entity.  *See* 254 F.3d at 881.  The Court also noted that it is a "well-established tenet of statutory construction that a specific statute controls over a general statute."  *Id.* (citations omitted).  The Court finds this reasoning persuasive.  In addition, a claim for personal injuries in New Mexico that falls within the three-year general statute of limitations for personal injury actions does not arise from a liability created by statute.   Personal injury actions in New Mexico derive from the common law.

## CONCLUSION

For the reasons stated above, **IT THEREFORE IS ORDERED** that the Los Lunas Public School Board of Education's Motion for Summary Judgment, filed July 16, 2003 **[Doc. No. 18]**, in which Albuquerque Public School joined pursuant to its Brief in Support of Its Motion for Summary Judgment, filed January 22, 2004 **[Doc. No. 35]**, is hereby **DENIED**.


Dated this 30th day of September, 2004.


_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE


Attorneys for Plaintiff:

      Jacquelyn Archuleta-Staehlin, Esq.
      Patricia Salazar Ives, Esq.

Attorneys for Defendants:

      Gail Stewart, Esq.
      Tara Ford, Esq.