IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**Cases Consolidated for All Purposes**

LOS LUNAS PUBLIC SCHOOLS
BOARD OF EDUCATION,
ALBUQUERQUE PUBLIC
SCHOOLS BOARD OF
EDUCATION,

    Plaintiffs,
vs.                 CIVIL NO.  03-299 JH/LFG

JOSE ARAGON and
PATRICIA ARAGON et al.,

    Defendants.
_____
JOSE ARAGON and PATRICIA
ARAGON, for themselves and on
behalf of Matthew Aragon,

    Plaintiffs,
vs.                 CIVIL NO.  03-434 JH/LFG

LOS LUNAS SCHOOLS BOARD
OF EDUCATION et al.,

    Defendants.
_____
BOARD OF EDUCATION OF THE
LOS LUNAS PUBLIC SCHOOLS,

    Plaintiff,
vs.                 CIVIL NO.  06-532 RLP/LFG

JOSE ARAGON and PATRICIA
ARAGON, on behalf of Matthew Aragon.

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING MOTION FOR CONDITIONAL PROTECTIVE ORDER**

THIS MATTER is before the Court on Jose and Patricia Aragon's ("Aragons") Motion for Conditional Protective Order [Doc. 82]. The motion was filed on November 3, 2006, and concerns a deposition which would be scheduled prior to the normal response time for the motion. Accordingly, due to the emergency nature of the request, the Court scheduled and conducted a motion hearing on November 7, 2006. Prior to the hearing, Defendant Albuquerque Public Schools did file its response in opposition.

## Background

This lawsuit involves a consolidation of a claim filed by the Aragons on their own behalf and on behalf of their son, Matthew Aragon, who was then 18, and brought against Los Lunas Schools Board of Education, Los Lunas Public Schools, Albuquerque Public Schools Board of Education, Albuquerque Public Schools, New Mexico State Board of Education, and Department of Education for the State of New Mexico in cause CIV 03-434.

That lawsuit was an appeal from an administrative decision of the IDEA administrative officer following the conduct of an administrative proceeding, as well as a complaint for damages based on discrimination under the Americans With Disabilities Act ("ADA"), and as Section 504 of the Rehabilitation Act.

Similarly, the Los Lunas Board of Education filed its own appeal of portions of the administrative decision in cause CIV 03-299. Subsequently, the Albuquerque Public Schools intervened in this litigation and both lawsuits were consolidated. A third case, Board of Education of Los Lunas v. Aragon, CIV 06-532 JH/LFG was later consolidated with the other two cases. This third case was also an appeal of portions of an administrative decision and arose out of the same facts and circumstances which gave rise to the previously consolidated cases.

Aragons are the parents of Matthew Aragon as well as his guardians and conservators. In April, 2003, the Thirteenth Judicial State District Court issued a order appointing the parents as guardians and conservators based on a finding that Matthew Aragon "is incapacitated with limitations with physical and mental ability requiring the appointment of a guardian and conservator." (Order Appointing Co-Guardian and Conservator, ¶ 4). Pursuant to the State Court's order, the Co-Guardians and Co-Conservators, Jose and Patricia Aragon, were required to "consult with Matthew Aragon and abide by his wishes regarding major decisions unless it is deemed that those decisions are not in his best interest, at which point the appointed Co-Guardians and Co-Conservators shall make the decision that is in the best interest of Matthew Aragon." (Order, ¶ D).

The parents are prosecuting the action on their own behalf as well as on Matthew's behalf as his guardians, and are seeking substantial damages from the Defendants. Aragons have secured the services of an expert witness who has interviewed and obtained information from Matthew. This information forms, in part, the basis of the opinion which Aragons' expert will offer at the time of trial.

Defendants Albuquerque Public Schools ("APS") and Los Lunas Public Schools ("Los Lunas") noticed Matthew Aragon's deposition for November 13, 2006. The deposition is scheduled to take place at APS counsel's office in Albuquerque, New Mexico.

### Present Motion

Aragons seek a "conditional protective order." They contend that APS and Los Lunas already "have independent institutional knowledge of Matthew Aragon's disabilities, since both defendants provided special education services to Matthew Aragon." (Motion, p. 2, ¶ 5). The inference in the motion is that since Defendants already have independent information on Matthew's disabilities, further discovery is not necessary.

Aragons further argue that:

> Counsel for Plaintiffs have reason to believe that, based on Matthew Aragon's disabling conditions . . . it may be difficult for Matthew Aragon to participate in and respond to questions in a formal deposition. Based on information and belief, and as officers of the court, Plaintiff's counsel also believe that Matthew could very well be determined by a court to be incompetent to testify under oath *at all* based on his diagnoses and the mental and communication limitations resulting from his disabilities.

(Motion, pp. 2-3, ¶ 6).

The Aragons' counsel state that, given Matthew's "historic patterns of unpredictable compliance with requests," he may refuse to travel to Albuquerque and come to the deposition at the Modrall Law Firm at all.

By a "conditional protective order," Aragons seek to avoid any motion practice if Matthew refused to be deposed or to produce evidence. Aragons' request: (1) "that no formal motions or other action against Plaintiff or Plaintiff's counsel would follow Matthew's possible refusal to appear or respond to his scheduled deposition;" (2) that the deposition be relocated to Los Lunas; and (3) that if Matthew refused to appear for his deposition or does not participate, that the Court determine that his conduct is not "willful" within the meaning of discovery rules. All Defendants oppose Aragon's motion.

## Analysis

The Court begins with a basic principal. A party may not assert a claim, seek substantial damages, and then deny the opposing party the very information and evidence needed to evaluate the claim for settlement purposes or to prepare to meet the proofs at trial if the case cannot otherwise be resolved. Brooks v. Hilton Casinos, Inc., 959 F.2d 757, 768 (9th Cir. 1992).

In this case, the Aragons' order of appointment requires them to consult with their son on major decisions and abide by their son's wishes "unless is deemed that those decisions are not in his best interests, at which point the appointed Co-Guardians and Co-Conservators shall make the decision that is in the best interest of Matthew Aragon." (Order, ¶ D).

Thus, is clear that Aragons have an obligation to produce their son in accord with the Notice of Deposition at the time and at the place that the deposition has been noticed. It is insufficient that Matthew may not want to participate, as the State court's order imposes the obligation on the parents and guardians and co-conservators to make the decision that is in his best interests. Moreover, as his guardians, Mr. and Mrs. Aragon have legal and custodial responsibilities over their son, and are required to produce him. It is certainly not in Matthew's best interests that he obstruct the discovery process or refuse to produce information that is otherwise discoverable.

Defendants argue that Matthew willingly participated in an interview with his own expert, and the information obtained in that interview serves, in part, as the basis of the opinion that the expert will offer at trial. It would be unfair, under those circumstances, to allow Matthew to be produced and provide information to his own expert, and yet to refuse to produce him to the Defendants so as to allow them the right to obtain information directly from Matthew when Matthew's own expert obtained information from him.

Aragons argue that because of the guardianship and Matthew's mental impairment, it is not likely that Matthew can respond to questions, and they request that, if he refuses to appear for the deposition, the Court simply determine that his refusal is not willful. The Court declines to find, in advance and without consideration of evidence, that the parents' refusal to produce their ward is excusable. The Court also expresses some skepticism that the information provided to his own expert would be relevant, but that provided to Defendants would not.

5

The deposition has not yet taken place. While Aragons' counsel anticipate that Matthew may decline to appear, that has not yet occurred. Moreover, this is not simply Matthew's choice. As previously indicated, his parents and legal guardians have an affirmative obligation to make the decisions that are in his best interests, and they are required to produce him for his deposition.

Aragons further intimate that the deposition isn't necessary as Defendants have "independent knowledge" from other sources about Matthew's disability. The Court rejects this argument. Notwithstanding the fact that Defendants have information, they are not precluded from utilizing appropriate discovery mechanisms available to all litigants under the rules of procedure.

The Aragons also argue that Matthew may not be competent. This may well be the case, but not determination as to his competency has yet been made. In Joseph L. Cotckett, Federal Courtroom Evidence § 601.3.1 (5th ed. 2005), the author writes:

> In early common law, mental incapacity was grounds for a finding of incompetence. In modern practice, virtually all witnesses are permitted to testify, **regardless of their mental impairments**. The extent of their capacity to observe, remember, and relate goes to their credibility. [Emphasis in the original].

Cotckett cites United States v. Blankenship, 923 F.2d 1110, 1116 (5th Cir. 1991), and United States v. Phibbs, 999 F.2d 1053, 1070 (6th Cir. 1993), as examples of instances where individuals with mental impairments were permitted to testify. So, too, in Andrews v. Neer, 253 F.3d 1052, 1062-63 (8th Cir. 2001), a witness was permitted to testify notwithstanding a prior involuntary commitment (witness's status as involuntarily committed schizophrenic at time of testimony did not disqualify him from testifying; mental illness is ground for impeachment, but his status does not *ipso facto* render them incompetent to testify so long as trial court is properly satisfied the witness has the ability to testify truthfully).

Matthew has not been determined incompetent by any court of general jurisdiction. Rather, the State court found that he was "incapacitated with limitations in physical and mental ability" and it was in his best interests that a guardian and conservator be appointed. Thus, there is no determination at this time, one way or the other, of Matthew's competency to testify as a witness.

Under federal law, questions concerning a witness's competency to testify must be determined by the applicable state law in actions where state law supplies the rule of decision with respect to an element of a claim or defense. Fed. R. Evid. 601. Thus, the Court turns to New Mexico State law for guidance.

Two cases are significant--State v. Fairweather, 116 N.M. 456, 461, 863 P.l2d 1077, 1082 (1993), and State v. Manlove, 79 N.M. 189, 193, 441 P.2d 229, 233 (1968). These cases stand for the proposition that the elements in a trial court's determination of a witness's competency to testify should be the extent of the person's ability to observe, recall and communicate, as well as the person's appreciation or consciousness of the importance of his oath. *See also* State v. Hueglin, 130 N.M. 54, 58-59, 16 P.3d 1113, 1117-18 (Ct. App. 2000), discussing Manlove in the contest of the adoption of New Mexico Rules of Evidence, in particular Rule 11-601.

How better to provide the trial court with information on these matters than the deposition? This is a discovery deposition. If the parties dispute Matthew's competency to testify or the admissibility of the evidence obtained in the deposition, that ruling can be determined pretrial or at the time of trial by the trial judge. The Court determines that a deposition is invaluable in providing information to the trial judge to allow the judge to make the appropriate determination of competency and admissibility of the evidence.

The fact that an order of guardianship is in place does not, automatically, disqualify Matthew as a witness. Indeed, even a prior judgment of incompetency does not in and of itself serve to

disqualify the deponent. Mobile Oil Corp. v. Floyd, 810 SW 2d 321 (Tex. App.1991), and in State v. Hueglin, *supra*, the New Mexico Court of Appeals upheld a trial judge's ruling admitting videotaped testimony of a witness who suffered from Down Syndrome and had an IQ of 36.

The Aragons finally request that the Court order the place of deposition to be changed. The Aragons, however, chose the forum and are required to produce their evidence in the forum. While counsel are free to accommodate each other's request for modifications on where the deposition shall take place, Defendants are simply not required to move the place of the deposition because it would be more convenient for the deponent. The request to require the deposition in Las Lunas is denied.[1]

Should Matthew fail to appear at the deposition without good cause, or should he willfully refuse to produce evidence if he has the ability to produce that evidence, Defendants are free to pursue any right or remedy available to them as authorized by the federal rules or case law.

IT IS ORDERED that the Aragons' Motion for Conditional Protective Order is DENIED.

*signature*
Lorenzo F. Garcia
Chief United States Magistrate Judge

---

[1] Defendants agreed to the deposition in Los Lunas if Aragons could find reasonable accommodations. Aragons, however, were unable to arrange for any place to accommodate the deposition.